UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RODNEY THOMAS,                        :

                    Plaintiff,        :    02 Civ. 5746 (HBP)

     -against-                        :    OPINION
                                           AND ORDER
UNITED STATES OF AMERICA,             :

                    Defendant.        :

----------------------------------X

          PITMAN, United States Magistrate Judge:


I.   Introduction


          By motion dated February 20, 2010 (Docket Item 79), one

of plaintiff's attorneys,[1] Jake Harper, Esq., moves to recover

his fees in this matter.  All parties have consented to my

exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, Harper's motion is granted and

he is granted a charging lien in the amount of $16,087.50 against

_____

          [1]Although both Harper and plaintiff's current attorneys,
O'Melveny & Myers LLP ("O'Melveny") appear to regard Harper as
plaintiff's former counsel, the Docket Sheet in this matter does
not disclose any motion by Harper to withdraw from the case.  In
this District, counsel of record may be relieved only by Court
Order.  Local Civil Rule 1.4 ("An attorney who has appeared as
attorney of record for a party may be relieved or displaced only
by order of the Court and may not withdraw from a case without
leave of the Court granted by order.").  Accordingly, both Harper
and O'Melveny are currently counsel for plaintiff.

plaintiff and the funds sums previously paid to plaintiff to settle this matter.

II.   <u>Facts</u>

The facts underlying plaintiff's claims are set forth in detail in the prior decisions in this matter by the late Honorable Constance Baker Motley, United States District Judge, and the United States Court of Appeals for the Second Circuit. <u>Thomas v. Ashcroft</u>, 02 Civ. 5746 (CBM), 2004 WL 1444735 (S.D.N.Y. June 25, 2004), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd</u> <u>in</u> <u>part</u>, 470 F.3d 491 (2d Cir. 2006).  Because they are not directly relevant to the pending dispute, the facts underlying plaintiff's claims are summarized only to the extent necessary for an understanding of the current dispute.

Plaintiff's complaint alleges that as a result of the repeated failures by the Drug Enforcement Administration ("DEA") and the United States Bureau of Prisons ("BOP") to provide eye drops to him while he was a pretrial detainee, in violation of the orders of both physicians and the Court, plaintiff permanently lost his eyesight.

Plaintiff alleges that he was diagnosed with glaucoma in March 2000 and was prescribed a combination of eye drops to be administered daily.  In September 2001, plaintiff was arrested in

2

California on the basis of a criminal complaint filed in this District alleging that plaintiff had violated various provisions of the federal narcotics laws.  Plaintiff alleges that DEA agents confiscated his eye drops at the time of his arrest and subsequently discarded them.  Plaintiff was subsequently removed to this District.  Plaintiff claims that approximately one month elapsed between his arrest in California and his initial appearance in this District and that he was without his eye drops for that entire period

At his initial appearance in this District, a Magistrate Judge issued an Order directing that plaintiff receive adequate medical care.[2]  Plaintiff alleges that during his ensuing months in custody, he was provided with his eye drops only rarely and erratically despite the fact that he had been examined by physicians who repeatedly advised BOP officials that plaintiff was in danger of losing his eyesight if he continued to be deprived of his eye drops.  By the date of the complaint in this action -- July 20, 2002 -- plaintiff alleges that he had become

---

[2]Although bail was set for plaintiff at his initial appearance in this District, it appears that he was never able to satisfy the bail conditions and was detained during the pendency of the criminal charges.

permanently blind as a result of being deprived of the medication necessary to treat his glaucoma.[3]

Plaintiff, represented by Harper, commenced this action on July 23, 2002 alleging constitutional claims under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) (Docket Item 1).  Harper also prepared an amended complaint which was filed on February 10, 2003 (Docket Item 10).  Defendants subsequently moved to dismiss the amended complaint, and Harper prepared two memoranda of law in opposition to the motion (Docket Items 30, 38).  On June 25, 2004, Judge Motley granted the motion to dismiss, see Thomas v. Ashcroft, supra, 2004 WL 1444735, and Harper's active representation of plaintiff came to an end at that time.

Represented by pro bono counsel, plaintiff appealed from the dismissal of his amended complaint, and the Court of Appeals affirmed Judge Motley's decision in part, reversed the decision in part and remanded the matter for further proceedings.

---

[3]The criminal charges against plaintiff were resolved in September 2002, by plaintiff's guilty plea to one count of conspiring to violate the narcotics laws of the United States in violation of 21 U.S.C. § 846.  Plaintiff was subsequently sentenced to 188 months' imprisonment to be followed by five years of supervised release.  After the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), plaintiff was resentenced to 140 months' imprisonment to be followed by five years of supervised release.  According to the BOP's website, plaintiff was released from custody in November 2011.

Thomas v. Ashcroft, supra, 470 F.3d 491.  Although Harper was
never relieved as counsel for plaintiff, O'Melveny volunteered to
represent plaintiff after the remand, and there appears to be no
dispute that Harper took no active part in plaintiff's represen-
tation after the remand.  Among other things, O'Melveny performed
over 5,000 hours of legal and administrative work on plaintiff's
case, filed a complaint in the United States District Court for
the Central District of California asserting a claim under the
Federal Tort Claims Act ("FTCA"), filed a second amended com-
plaint in this action adding a similar claim, conducted 26
depositions, defended the depositions of plaintiff and two non-
parties, hired and defended the deposition of an expert witness
retained on behalf of plaintiff and conducted the deposition of
defendants' expert witness (Declaration of Brooke E. Cucinella,
Esq. in Support of Plaintiff Rodney Thomas's Opposition to Jake
Harper's Motion for Attorney's Fees and/or Quantum Meruit Recov-
ery Pursuant to 28 U.S.C. § 2678, dated March 11, 2010 (Docket
Item 82) ("Cucinella Decl.") ¶¶ 5-6).

          After O'Melveny entered the action, plaintiff and the
defendants stipulated to the dismissal of plaintiff's Bivens
claims, without prejudice to his FTCA claims against the United
States (Docket Item 65).  Thereafter, O'Melveny successfully
negotiated the settlement of the FTCA claims for the sum of

$250,000 and waived any claim that O'Melveny may have had against plaintiff or defendants for a fee.  In addition to his work on this action, Harper also filed the administrative claim that was the necessary predicate for the FTCA claim.  See 28 U.S.C. § 2675(a).

Harper seeks to recover the sum of $70,350.00 as fees. In support of his application, he has submitted time sheets in which he represents that he spent 234.5 hours working on the matter and seeks to be compensated at an hourly rate of $300.00 per hour (Declaration of Jake Harper, Esq., dated April 24, 2008, (Docket Item 63)).  Plaintiff, through papers prepared by O'Melveny, opposes Harper's application and claims that Harper should receive nothing beyond the $1,500.00 retainer he received from plaintiff at the inception of his representation.

III.  Analysis

Although there can be no question that O'Melveny performed the vast majority of the work that lead to the settlement of this action, I can find no legal reason in plaintiff's submissions, or through my own research, why Harper should not be compensated for his work.  Although plaintiff brashly claims that "Mr. Harper Is Not Responsible for Any Positive Result from this Lawsuit," (Plaintiff Rodney Thomas's Opposition to Jake Harper's

6

Motion for Attorney's Fees and/or Quantum Meruit Recovery Pursu-
ant to 28 U.S.C. § 2678, undated (Docket Item 81)("Pl.'s Opp."),
at 8), several facts are undeniable.  First, Harper timely
initiated plaintiff's action, and but for Harper's willingness to
take on a case in which recovery was uncertain, plaintiff would
have had no action and would have recovered nothing.  Second,
although plaintiff now makes much of the fact that Harper's first
amended complaint was dismissed, that dismissal was reversed in
part by the Court of Appeals, thereby establishing that Harper
had prepared a legally sufficient pleading.  Third, Harper timely
filed the administrative complaint that was necessary for the
assertion of plaintiff's FTCA claims, and it was the FTCA claims
that were ultimately settled to plaintiff's financial benefit.
Although O'Melveny's colossal contribution to plaintiff's recov-
ery cannot be over emphasized and although there can be little
question that Harper is not the "MVP" of the case, plaintiff's
suggestion that Harper contributed nothing to the case is little
more than bombast.

        Plaintiff also argues that because he is now blind, he
needs the full amount of the settlement to adjust to this life-
changing event.  Plaintiff's condition is tragic, and, although
plaintiff has offered no evidence on the issue, I readily accept
that his assets are, at best, modest, given his lengthy period of

incarceration.  Nevertheless, the relative needs of a creditor
and debtor has never been a defense to an action to collect a
debt.  Plaintiff's financial need has no legal significance here.

Although Harper is still one of plaintiff's counsel of
record, he has not actively participated in plaintiff's represen-
tation since 2004, and his position is analogous to an attorney
terminated without cause.  Under New York law, an attorney
terminated without cause is entitled to a charging lien to secure
payment of reasonable fees and costs.  Skylon Corp. v. Greenberg,
164 F.3d 619, 619 (2d Cir. 1998); Sequa Corp. v. GBJ Corp., 156
F.3d 136, 147 (2d Cir. 1998); Pilitz v. Inc. Vill. of Freeport,
CV 07-4078 (ETB), 2011 WL 5825138 at *2 (E.D.N.Y. Nov. 17, 2011).
The lien should be for the fair and reasonable value of the
discharged attorney's services, "determined at the time of the
discharge and computed on the basis of quantum meruit."  Stair v.
Calhoun, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010); accord Sequa
Corp. v. GBJ Corp., supra, 156 F.3d at 148; Margolies v. Cnty. of
Putnam, N.Y., 09 Civ. 2061 (RKE)(GAY), 2011 WL 721698 at *1
(S.D.N.Y. Feb. 23, 2011) (Yanthis, M.J.).

> Among the factors to be considered in such an analysis
> are the difficulty of the matter, the nature and extent
> of the services rendered, the time reasonably expended
> on those services, the quality of performance by coun-
> sel, the qualifications of counsel, the amount at
> issue, and the results obtained (to the extent known).

8

Sequa Corp. v. GBJ Corp., supra, 156 F.3d at 148; accord
Margolies v. Cnty. of Putnam, N.Y., supra, 2011 WL 721698 at *1.
However, "'the lodestar[4] approach is sufficiently congruent with
the criteria applicable under New York law to justify such a
choice' of calculation methodology." Sequa Corp. v. GBJ Corp.,
supra, 156 F.3d at 148-49, citing F.H. Krear & Co. v. Nineteen
Named Tr., 810 F.2d 1250, 1263 (2d Cir. 1987) and Peter Fabrics,
Inc. v. S.S. Hermes, 765 F.2d 306, 314-20 (2d Cir. 1985).
Because I am more accustomed to determining fees through what was
formerly known in this Circuit as the lodestar method and because
it is "sufficiently congruent" with a pure quantum meruit ap-
proach, I shall use it to determine Harper's fee.

---

[4]In Arbor Hill Concerned Citizens Neighborhood Ass'n v.
Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008), the Court of
Appeals abandoned the use of the term "lodestar" to describe the
appropriate method for calculating attorneys fees. "In the
Second Circuit, attorneys' fees awards are now calculated based
on the 'presumptively reasonable fee' approach . . . ." Bldg.
Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC, 08
Civ 9264 (DC), 2010 WL 1438117 at *2 (S.D.N.Y. Apr. 9, 2010)
(Chin, then D.J., now Cir. J.). The "presumptively reasonable
fee" approach requires the court to determine the fee by
calculating the product of the reasonable hourly rate for the
attorney seeking fees and a reasonable number of hours for the
work performed, see Ret. Plan of Unite Here Nat'l Ret. Fund v.
Kombassan Holding A.S., 06 Civ. 5861 (JSR), 2011 WL 5579033 at *1
(S.D.N.Y. Nov. 15, 2011) (Rakoff, D.J.), and is not substantially
different from the lodestar approach. Brown v. Starrett City
Assocs., 09-CV-3282 (JBW), 2011 WL 5118438 at *4 & n.5 (E.D.N.Y.
Oct. 27, 2011); see also Perdue v. Kenny A., ___ U.S. ___, 130 S.
Ct. 1662, 1669 (2010) ("[T]here is a strong presumption that the
lodestar is sufficient . . . .").

9

A.  <u>Reasonable Hourly Rate</u>

The hourly rates used in determining a fee award should be "what a reasonable, paying client would be willing to pay." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, <u>supra</u>, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 895-96 n.11 (1984); <u>accord</u> <u>Reiter v. MTA N.Y.C. Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006).  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  <u>Farbotko v. Clinton Cnty. of N.Y.</u>, 433 F.3d 204, 208-09 (2d Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  <u>A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.</u>, 407 F.3d 65, 82 (2d Cir. 2005); <u>Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund</u>, 831 F.2d 407, 409 (2d Cir. 1987).

Finally, the Second Circuit has also identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other

10

counsel (if any), the resources required to prosecute
the case effectively (taking account of the resources
being marshaled on the other side but not endorsing
scorched earth tactics), the timing demands of the
case, whether an attorney might have an interest (inde-
pendent of that of his client) in achieving the ends of
the litigation or might initiate the representation
himself, whether an attorney might have initially acted
pro bono (such that a client might be aware that the
attorney expected low or non-existent remuneration),
and other returns (such as reputation, etc.) that an
attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of
Albany, supra, 522 F.3d at 184.

In all cases, "the fee applicant has the burden of
showing by 'satisfactory evidence -- in addition to the attor-
ney's own affidavits' -- that the requested hourly rates are the
prevailing market rates." Farbotko v. Clinton Cnty. of N.Y.,
supra, 433 F.3d at 209, quoting Blum v. Stenson, supra, 465 U.S.
at 895-96 n.11. In determining reasonable hourly rates, a court
should first examine the attorneys' experience. Kahlil v.
Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 475
(S.D.N.Y. 2009) (Holwell, D.J.), citing Marisol A. ex rel. Forbes
v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (Ward,
D.J.).

Harper is a 1971 graduate of the School of Law of the
University of Texas where he was a member of the school's Legal
Research Board. He was admitted to the California Bar in 1976,

the New York Bar in 1991 and admitted in the Southern and Eastern
Districts of New York in 1999 (Declaration of Jake Harper, dated
April 24, 2008 (Docket Item 63) ("Harper Decl."), ¶ 3).  His
practice is primarily criminal in nature with a secondary empha-
sis on civil rights litigation.  He is also a member of several
criminal defense associations and is a member of the 18B Assigned
Counsel Panel in New York County (Harper Decl. ¶ 3).  Harper
seeks to be compensated at the rate of $300.00 per hour (Harper
Decl. ¶ 4).  Plaintiff does not challenge this rate.

        The rate sought by Harper is clearly reasonable in
light of his 40 years of his experience as an attorney and his 20
years of experience within New York.  In <u>Marisol A. ex rel.</u>
<u>Forbes v. Giuliani</u>, <u>supra</u>, 111 F. Supp. 2d at 386, a case that is
now more than 10 years old, the court found a rate of $300 per
hour reasonable for an attorney with between 10 to 15 years of
experience in this District.  <u>See also</u> <u>Torres v. City of New</u>
<u>York</u>, 07 Civ. 3473 (GEL), 2008 WL 419306 at *1 (S.D.N.Y. Feb. 14,
2008) (Lynch, then D.J., now Cir. J.) ("The rate of $350 is not
unreasonable for a lawyer of ten years' experience.").  More
recently, the Honorable Andrew J. Peck, United States Magistrate
Judge, found rates of $300 per hour and $275 per hour for 2007
law school graduates to be reasonable.  <u>Allende v. Unitech</u>
<u>Design, Inc.</u>, 10 Civ. 4256 (AJP), 2011 WL 891445 at *3-*4

(S.D.N.Y. Mar. 15, 2011) (Peck, M.J.) (collecting cases); see also Wong v. Hunda Glass Corp., 09 Civ. 4402 (RLE), 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1, 2010) (Ellis, M.J.) ("[T]he range of fees in this District for civil rights and employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour." (citations omitted)); Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048 (GEL), 2007 WL 1373118 at *4 (S.D.N.Y. May 8, 2007) (Lynch, then D.J., now Cir. J.) (awarding attorney with 15 years' experience $400 per hour and sixth-year associate $300 per hour). Accordingly, I find Harper's requested rate of $300 per hour to be consistent with the prevailing rates in this District for attorneys with substantially less experience than Harper, and, therefore, reasonable.

   B.   Reasonable
        Number of Hours

        The Honorable Loretta A. Preska, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

>       To assess the reasonableness of the time expended
>       by an attorney, the court must look first to the time
>       and work as they are documented by the attorney's
>       records.  See Forschner Group, Inc. v. Arrow Trading
>       Co., Inc., No. 92 Civ. 6953 (LAP), 1998 WL 879710, at
>       *2 (S.D.N.Y. Dec. 15, 1998).  Next the court looks to
>       "its own familiarity with the case and its experience
>       generally . . . .  Because attorneys' fees are depend-

13

ent on the unique facts of each case, the resolution of
the issue is committed to the discretion of the dis-
trict court." <u>AFP Imaging Corp. v. Phillips Medizin
Sys.</u>, No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1
(S.D.N.Y. Dec. 13, 1994) (quoting <u>Clarke v. Frank</u>, 960
F.2d 1146, 1153 (2d Cir. 1992) (quoting <u>DiFilippo v.
Morizio</u>, 759 F.2d 231, 236 (2d Cir. 1985))).

                    *     *     *

        Finally, billing judgment must be factored into
the equation. <u>Hensley</u>, 461 U.S. at 434; <u>DiFilippo</u>, 759
F.2d at 235-36.  If a court finds that the fee appli-
cant's claim is excessive, or that time spent was
wasteful or duplicative, it may decrease or disallow
certain hours or, where the application for fees is
voluminous, order an across-the-board percentage reduc-
tion in compensable hours.  <u>In re "Agent Orange" Prod-
ucts Liab. Litig.</u>, 818 F.2d 226, 237 (2d Cir. 1987)
(stating that "in cases in which substantial numbers of
voluminous fee petitions are filed, the district court
has the authority to make across-the-board percentage
cuts in hours 'as a practical means of trimming fat
from a fee application'" (quoting <u>Carey</u>, 711 F.2d at
1146)); <u>see also</u> <u>United States Football League v.
National Football League</u>, 887 F.2d 408, 415 (2d Cir.
1989) (approving a percentage reduction of total fee
award to account for vagueness in documentation of
certain time entries).

<u>Santa Fe Natural Tobacco Co. v. Spitzer</u>, 00 Civ. 7274 (LAP), 00

Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002)

(Preska, D.J.); <u>accord</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434

(1983); <u>see also</u> <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 876 (2d

Cir. 1998); <u>Orchano v. Advanced Recovery, Inc.</u>, 107 F.3d 94, 98

(2d Cir. 1997); <u>Sulkowska v. City of New York</u>, 170 F. Supp. 2d

359, 365 (S.D.N.Y. 2001) (Schwartz, D.J.).

                            14

The party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994), citing Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n of N.Y. v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003) (Scheindlin, D.J.), citing Blum v. Stenson, supra, 465 U.S. at 897.

Harper has submitted six and one-half pages of time records which reflect the time that he spent working on plain- tiff's case from March 2002 through July 2004.  Plaintiff does not challenge any specific entry or group of entries.  He merely reiterates his position that Harper should receive nothing beyond the $1,500 retainer he received at the outset of his representa- tion of plaintiff.  Nevertheless, a number of issues are obvious from the face of Harper's time records that warrant a substantial reduction in the fee sought.

First, Harper nowhere confirms that the time sheets he has submitted reflect contemporaneously recorded time entries. In applying for fees and costs, "any attorney . . . must document the application with contemporaneous time records.  These records should specify, for each attorney, the date, the hours expended,

and the nature of the work done."  New York State Ass'n for
Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.
1983); see also Ermenegildo Zenga Corp. v. 56th St. Menswear,
Inc., 06 Civ. 7827 (HB)(GWG), 2008 WL 4449533 at *6 (S.D.N.Y.
Oct. 2, 2008) (Baer, D.J.) (adopting Report and Recommendation)
(fee request submission must "indicate that it is based on
contemporaneous time records" (collecting cases)).  Transcrip-
tions of contemporaneous time records containing the above
information have been found to satisfy this requirement.  See,
e.g., Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,
supra, 34 F.3d at 1160 (accepting a "typed listing of [attor-
neys'] hours from their computer records," in lieu of contempora-
neous records, where the record showed that the attorneys "made
contemporaneous entries as the work was completed, and that their
billing was based on these contemporaneous records"); see also
Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 302-03
(S.D.N.Y. 1999) (Edelstein, D.J.).  Because the records appear to
have been contemporaneously recorded and plaintiff does not raise
the issue, I shall assume that the typed time sheets Harper has
submitted reflect contemporaneous time records notwithstanding
the absence of affirmative evidence affirmatively demonstrating
the proposition.

16

Second, the number of hours for which compensation is sought seem grossly excessive.  Harper's tangible work product in this matter consists of a complaint (20 pages), an amended complaint (27 pages), two memoranda in opposition to motions to dismiss (21 and 25 pages) and the administrative claim on which plaintiff's FTCA claims were based.  Although there is some new matter in the amended complaint, approximately 80% of it is redundant of the original complaint.  The memoranda of law appear to be well-researched and cite a substantial number of cases.  Nevertheless, there is also substantial overlap between the memoranda of law.  These four documents in the aggregate comprise, at most, approximately 70 pages of original, non-redundant material.  Despite the relative paucity of tangible work product, Harper seeks compensation for 234.5 hours of time.  I conclude that the number of hours for which compensation is sought is disproportionate to the work performed by a factor of two and, therefore, warrants a reduction in the number of hours of 50%.

Third, a number of Harper's time entries are either vague or incomprehensible.  There a number of entries reflecting correspondence, meetings or telephone calls concerning undisclosed subjects,[5] entries reflecting legal research concerning

---

[5]See, for example, the entries for March 5, 12, 2002, April
(continued...)

17

undisclosed subjects[6] and entries reflecting services that are not clearly described.[7]  I conclude that the hours for which Harper is compensated should be cut by an additional 15% to account for vague or incomprehensible time entries.  See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172-73 (2d Cir. 1998) (upholding 20% reduction in billed time for vagueness and other deficiencies where many time entries merely read "letter to court," "staff conference," and "work on motion"); Tucker v. Mukasey, 03 Civ. 3106 (LTS)(FM), 2008 WL 2544504 at *1 (S.D.N.Y. June 20, 2008) (Swain, D.J.) (applying  percentage reduction in hours billed on basis of vagueness because entries "fail[ed] to describe adequately the nature of the calls, the contents of the reports or documents, or the topics of discussions"); Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) (finding descriptions such as "hearing preparation," "telephone conference with client," and "review records" too vague).

---

[5](...continued)
12, 2002, May 25, 26, 2002, June 7, 9, 10, 26, 29, 2002 and July 3, 5, 18, 2002 (Ex. A to Harper Decl.)

[6]See, for example, the entries for July 19, 2002 and October 11 and 12, 2003 (Ex. A to Harper Decl.).

[7]For example, with respect to services performed on February 9, 2003, Harper seeks compensation for 2.5 hours, or $750, for "[f]inal draft of amended complaint.  Prep for delivery to D counsel" (Ex. A. to Harper Decl.).

Fourth, Harper's time records are also inflated by his use of block billing and quarter-hour increments to record his time.  "While not prohibited, block billing has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary."  Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, 04 Civ. 3600 (SWK), 2005 WL 3099592 at *5 (S.D.N.Y. Nov. 17, 2005) (Kram, D.J.) (internal quotation marks omitted).  In several of his entries, Harper has aggregated multiple tasks without identifying how much time was spent on each task.[8]  When coupled with the vague descriptions of individual tasks as described above, the block-billed entries on these invoices make it nearly impossible to assess the reasonableness of the hours billed.  While the use of block billing does not automatically compel an across-the-board reduction, see Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *6 (S.D.N.Y. Apr. 7, 2008) (Lynch, the D.J., now Cir. J.), the difficulty created by Harper's use of block billing in this case warrants such a reduction.  See

-------------------------

[8]See, for example, the entries for January 11, 2003, February 1, 4, 7, 2003 and March 24, 2003 (Ex. A to Harper Decl.).

19

Alexander v. Amchem Prods., Inc., 07 Civ. 6441 (RJS), 2008 WL
1700157 at *8 n.8 (S.D.N.Y. Apr. 3, 2008) (Sullivan, D.J.)(col-
lecting cases); see also Aiello v. Town of Brookhaven, 94-CV-2622
(FB)(WDW), 2005 WL 1397202 at *3 (E.D.N.Y. June 13, 2005) (apply-
ing 10% reduction to billed hours because of attorneys' "substan-
tial" use of block billing); Molefi v. Oppenheimer Trust, 03 CV
5631 (FB)(VVP), 2007 WL 538547 at *7 (E.D.N.Y. Feb. 15, 2007)
(applying 15% reduction for block-billing and excessive billing);
Klimbach v. Spherion Corp., 467 F. Supp.2d 323, 332 (W.D.N.Y.
2006) (reducing 10% of hours billed because of vagueness and
block-billing); Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.,
277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (Marrero, D.J.) (apply-
ing 15% reduction for block billing and excessive time entries).
Finally, Harper's use of quarter-hour increments to record his
time is also problematic.  "The use of such large billing incre-
ments is inappropriate."  Cowan v. Ernest Codelia, P.C., 98 Civ.
5548 (JGK)(JCF), 2001 WL 30501 at *8 (S.D.N.Y. Jan. 12, 2001)
(Francis, M.J.) (finding counsel's excessive billing to be
"compounded" by his use of recording time in "increments no
smaller than one-quarter hour"), aff'd, 50 F. App'x 36 (2d Cir.
2002); see also Oxford Venture Fund Ltd. P'ship v. CIT
Group/Equip. Fin., Inc., 89 Civ. 1836 (SWK)(JCF), 1990 WL 176102
at *2 (S.D.N.Y. Nov. 5, 1990) (Francis, M.J.).  I find that the

hours for which compensation should be awarded should be reduced by an additional 10% to compensate for Harper's block billing and use of quarter-hour increments to record his time.

Finally, I conclude that no reduction is appropriate due to the fact that the complaints drafted by Harper asserted only <u>Bivens</u> claims and the action ultimately settled on the basis of FTCA claims that were first asserted only after Harper's active representation of plaintiff ended.   The <u>Bivens</u> claim and the FTCA claims arose out of precisely the same facts, and it is, inappropriate, to deny Harper compensation for the services he performed concerning the <u>Bivens</u> claims.   See <u>Gierlinger v. Gleason</u>, <u>supra</u>, 160 F.3d at 877.

Thus, in the aggregate, I conclude that Harper's hours should be reduced by 75%.

C.   Calculation of
     <u>Harper's Fee</u>

As noted above, Harper claims compensation for a total of 234.5 hours.   Reducing these hours by 75% yields  58.625 hours.   Multiplying this figure by the rate of $300.00 per hour yields a product of $17,587.50, from which should be deducted the

$1,500.00 retainer paid to Harper,[9] leaving a net amount due of $16,087.50.

IV.   Conclusion

        Accordingly, for all the foregoing reasons, I find that Jake Harper, Esq. is entitled to recover attorney's fees from plaintiff in the net amount of $16,087.50 and that he is awarded a charging lien in that amount against plaintiff and the sums previously paid to plaintiff in settlement of this action.

Dated:  New York, New York
        December 5, 2011

                                    SO ORDERED


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

----

        [9]Harper contends that th $1,500 payment was a non-refundable consultation fee and should not be deducted from the fee award. However, he submits no evidence in support of this contention. Accordingly, I resolve the issue in favor of client and conclude that the $1,500 payment constitutes a credit against Harper's fees.  See generally Wong v. Michael Kennedy, P.C., 853 F. Supp. 73, 80 (E.D.N.Y. 1994); Shaw v. Manufacturers Hanover Trust Co., 68 N.Y.2d 172, 177, 499 N.E.2d 864, 866, 507 N.Y.S.2d 610, 612 (1986); Jacobson v. Sassower, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985).

Copies mailed to:

Peter P. Ferraiuolo, Esq.
Suite 500
160 Broadway
New York, New York  10038

Jake Harper, Esq.
18th Floor
30 Vesey Street
New York, New York  10007

Mark A. Racanelli, Esq.
Brooke E. Cucinella, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, New York  10036

Brian K. Morgan, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, New York  10007